**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**


GODFREY DRAKE                                                            PLAINTIFF

V.                                            CIVIL ACTION NO. 3:03-cv-284HTW-JCS

ANTHONY J. PRINCIPI, SECRETARY
DEPARTMENT OF VETERANS AFFAIRS                           DEFENDANT


### MEMORANDUM OPINION AND ORDER

Before the court is the defendant, the United States of America, on behalf of

Anthony J. Principi, Secretary of the Department of Veterans Affairs (hereinafter "VA"),

by and through the United States Attorney for the Southern District of Mississippi,

asking this court to grant its motion for summary judgment filed under Federal Rules of

Civil Procedure 56(b) and (c)[1] **[Docket no. 63]**.  Plaintiff here is Godfrey Drake, an

African American/Black male, who filed this lawsuit *pro se*.  In his Second Amended

Complaint, plaintiff alleges that he was a victim of "reprisal"[2] discrimination on five

separate occasions, to wit:  (1) when he was not selected for a Program Analyst

---

[1]Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a]
party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any
time, move with or without supporting affidavits for a summary judgment in the party's favor as
to all or any part thereof."

Federal Rule of Civil Procedure 56(c) provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits,
if any, show that there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law.

[2]That is, retaliation.

position first advertised on February 12, 2001;  (2) when he was suspended for four days for sending harassing emails to Administrative Judge Bell in early April 2003;  (3) when he was reprimanded for being absent without leave on April 23, 2001;  (4) when he was denied advanced leave in July 2001;  and (5) when he was not selected for a Program Analyst position first advertised on September 17, 2001.

In its submissions in support of its motion for summary judgment, the defendant asserts that the plaintiff has failed to exhaust the requisite administrative remedies on these "reprisal" claims.   According to the defendant, plaintiff never submitted claims (2) and (4) above to the Equal Employment Opportunity Commission ("EEOC") and although he submitted claims to the EEOC in connection with (1) and (5), such submissions were not predicated upon claims of "reprisal."

The defendant additionally argues that the plaintiff cannot demonstrate a prima facie case of retaliation on plaintiff's remaining claim, number (3) above, plaintiff's allegation that he was wrongfully reprimanded for being absent without leave on April 23, 2001.  Defendant's motion, then, attacks all of plaintiff's claims and asks this court to dismiss plaintiff's complaint in whole.  Plaintiff opposes defendant's motion in its entirety.

Given the plaintiff's status as *pro se*, on January 6, 2006, the court conducted a hearing on defendant's motion for summary judgment in order to better assess the validity of the parties' respective positions.  For the reasons stated below, the court finds the defendant's motion well-taken and, therefore, grants defendant's motion for summary judgment as against all of plaintiff's claims **[Docket no. 63]**.

2

## I.  BACKGROUND

Plaintiff is a Computer Specialist at the VA Medical Center in Jackson, Mississippi,[3] where he has been employed since March 1997.  Prior to his employment at the VA, plaintiff was a contract computer programmer for approximately ten years.  Plaintiff attended several institutions of higher education, but, to date, has not attained a post-secondary education degree.

In November 1998, plaintiff filed EEOC case number 98-4620, an administrative complaint, alleging that VA management had unfairly distributed overtime and training opportunities.  Plaintiff later abandoned this complaint because, plaintiff asserts, he reached a compromise with the VA.  After filing the administrative complaint, plaintiff alleges that he was labeled a "troublemaker" by the VA administration and that, thereafter, the administration retaliated against him on five separate occasions.  Plaintiff's five claims and various background facts are set out below.

**A.   Non-Selection For The Program Analyst Position First Advertised On February 12, 2001.**

The program analyst position, advertised by Vacancy Announcement #00-208 on February 12, 2001, was specifically for an Information Security Officer opening. The Information Security Officer's "primary responsibility is to implement the facility automated information security program, including the development, implementation, and monitoring of station-specific information security policy and procedures." Vacancy Announcement #00-208 of Feb. 12, 2001.  The Information Security Officer

---

[3]More specifically, the plaintiff is a computer programmer.

works in the Office of the Director and reports directly to the Special Assistant to the Director.

The selection process for the Information Security Officer position was bifurcated.  The first step was a screening process, which was performed by a Screening Committee consisting of four persons:  Ron Kirkpatrick, a white male;  Robin Simmons, an Hispanic female;  Tony Jackson, a black male;  and Dr. Jim Wilson, a white male.  The Screening Committee reviewed all applications, interviewed the candidates and, based upon the quality of the applications and interviews, conducted consensus scoring.  The Committee recommended Joel Dudenhefer, a white female, as the top candidate for the opening.  Plaintiff was ranked third by the Screening Committee.

The second step in the process was performed by a Selection Committee, which consisted of four persons:  Richard Baltz, Director of the VA Medical Center, a white male;  Dr. Kent Kirchner, Chief of Staff of VA Medical Center, a white male; Bruce Triplett, Associate Director of VA Medical Center, a black male;  and Jim Pasquith, Special Assistant to the Director, a white male.  The Selection Committee reviewed the applications of the candidates and conducted a second round of interviews.

This Selection Committee also determined that Joel Dudenhefer was the most qualified person for the job.  She was offered the position, but declined the offer.  The applicant ranked second by the Selection Committee, Mary Robbins (hereinafter "Robbins"), a white female, was then offered the position and she accepted.  The

Selection Committee determined that Robbins was better qualified for the Information Security Officer position than plaintiff, supposedly because she possessed experience at various levels throughout the hospital and knowledge of the various computer systems used throughout the hospital.  Furthermore, the Selection Committee was impressed by the ratings of Robbins by her supervisors:  that she exhibited a high level of independence, possessed strong interpersonal skills and had an established working relationship with other agency departments.

The Selection Committee determined that plaintiff's experience was not comparable to either that of Dudenhefer's or Robbins'.  The Committee also determined that plaintiff's interpersonal skills ratings were not on a par with the other candidates for the position.  Additionally, the Selection Committee concluded that both Dudenhefer and Robbins' applications were more thorough and detailed than the plaintiff's application.

After his failed effort to obtain the position of Information Security Officer, plaintiff filed an EEOC complaint, case number 200L-2287.  He complained therein that he had been the subject of discrimination on the basis of his **race, sex, and mental disability**.  (Emphasis added)

Plaintiff's claim was reviewed by the VA's Office of Employment Discrimination Complaint Adjudication.  An administrative judge within the Office of Employment Discrimination Complaint Adjudication conducted a hearing on plaintiff's claim and determined that the claim lacked merit.  On November 26, 2002, the plaintiff received a Final Order from the VA's Office of Employment Discrimination Complaint

5

Adjudication, which memorialized the administrative judge's holding and granted plaintiff a right to sue in federal court on his claim that he had been subjected to race, sex, and mental disability discrimination.

**B.      Reprimand For Being Absent Without Leave On April 23, 2001.**

On April 23, 2001, plaintiff was scheduled to work from 8:00 a.m. to 4:30 p.m.; however, says defendant, plaintiff was absent from his assigned work area from 10:30 a.m. to 4:30 p.m.  Based on plaintiff's alleged absence, Rachel Stokes (hereinafter "Stokes"), plaintiff's supervisor, recommended that plaintiff be reprimanded for his absence.  Additionally, she charged that plaintiff had demonstrated a pattern of taking leave without proper documentation or previous approval.

On August 14, 2001, plaintiff filed an EEOC complaint, case number 200L-2309, in which he complained that he had been the subject of **retaliation**, because he had been reprimanded as a direct consequence of having filed a prior EEOC complaint.

Plaintiff's claim was reviewed by the VA's Office of Employment Discrimination Complaint Adjudication.  An administrative judge within the Office of Employment Discrimination Complaint Adjudication conducted a hearing on plaintiff's claim and determined that the claim lacked merit.  On November 26, 2002, the plaintiff received a Final Order from the VA's Office of Employment Discrimination Complaint Adjudication, which memorialized the administrative judge's holding and granted plaintiff a right to sue in federal court on his **retaliation** claim.

6

**C.      Denial Of Advance Leave In July 2001**.

Plaintiff requested 36 hours of advance annual/sick leave in July 2001, to assist/advise his son, who purportedly was participating in a "professional camp" in Atlanta, Georgia.  At the time of his request, plaintiff had a balance of 3 hours of annual leave and 0.25 hours of sick leave.  Plaintiff's immediate supervisor recommended that plaintiff's application for advance leave be denied because over the past two years plaintiff's record had revealed a pattern of irresponsible usage. The recommendation also noted that plaintiff could have saved approximately forty hours of leave time by not leaving work early on Friday afternoons.  The Employee Relations Specialist and the Chief of Human Resources Management Services at the VA Medical Center concurred with this recommendation by plaintiff's supervisor. Thereafter, Bruce Triplett, Associate Director of VA Medical Center, a black male, formally disapproved plaintiff's request.

The plaintiff **did not file** an EEOC complaint alleging retaliation as it relates to this denial of advance leave.

**D.      Non-Selection For A Program Analyst Position First Advertised On September 17, 2001.**

The program analyst position, advertised by Vacancy Announcement #01-192 on September 17, 2001, was specifically for a Quality Management Coordinator opening.  The Quality Management Coordinator is responsible for the coordination and management of quality management, utilization review, and risk management. The Quality Management Coordinator reports to the Director of the Office of Quality

7

Management, who, at the time, was Janet Autry (hereinafter "Autry") (who states that she was unaware of the plaintiff's previous EEOC filings).  Autry stated that the position required an understanding of how to work in a group setting in order to develop performance improvement initiatives.  The job did not involve any computer programming.

The selection process for the Quality Management Coordinator was twofold. The first step in the process was performed by a Screening Panel, which consisted of Mike Naples, a white male;  Sheryll Paige-Williams, a black female;  and Tony Jackson, a black male (each of whom states that he/she was unaware of the plaintiff's previous EEOC filings). The panel interviewed and evaluated the candidates based on the qualifications identified in the vacancy announcement.  The Screening Panel determined that Marsha Arnold (hereinafter "Arnold"), a white female, was the most qualified candidate.

The second step in the process was performed by Autry, who considered the recommendation of the panel and reviewed the applications herself.  She also determined that Arnold was the most qualified candidate and decided to offer her the job, supposedly because Arnold had been a compliance officer at Mississippi Blood Services --- a position which entailed performance improvement and quality control responsibilities.

In reviewing the plaintiff's application, Autry says she determined that plaintiff had the educational prerequisite necessary for the position, but that his experience was in software/hardware, not quality control.  She states, "Although I think he's

8

probably excellent in computer skills, that wasn't what I was looking for here.  And then when you – if you review the questions and the ratings that they did, his answers were clearly not as well thought out or didn't have the information in it like Marsha's did."  Dr. Kirchner was the selecting official for the position, but he relied entirely on the recommendations of Autry and the Screening Committee.  Based on their recommendations, Dr. Kirchner says he selected Arnold.

On December 12, 2001, plaintiff filed an EEOC complaint, case number 200L-2309, in which he complained that he had been the subject of discrimination on the basis of his **race and mental disability**, because he was not selected for the aforementioned position.  Plaintiff's claim was reviewed by the VA's Office of Employment Discrimination Complaint Adjudication.  An administrative judge within the Office of Employment Discrimination Complaint Adjudication conducted a hearing on plaintiff's claim and determined that the claim lacked merit.  On November 26, 2002, the plaintiff received a Final Order from the VA's Office of Employment Discrimination Complaint Adjudication, which memorialized the administrative judge's holding and granted plaintiff a right to sue in federal court on his discrimination claims.

### E.   Suspension For Four Days For Sending Emails To Administrative Judge Bell In Early April 2003.

On November 21, 2002, after his administrative claims had been denied by Administrative Law Judge Bell, plaintiff sent an email to Judge Bell, which stated:

> Thank you Judge Bell for your recent decision. You confirmed my suspicion as to your purpose for supporting the Agency. This will get cleared up in Federal Court. You accepted all non-factual illegal claims for the Agency and looked over everything factual I submitted. It's not illegal to use Email while I may have embarrassed the system for hiring incompetent personnel,

> I was merely trying to save the VA money . . . .  This is all a waste of
> taxpayer money . . . . God Bless you and your family and the oath you took
> for Judge.  Common sense and fairness could have prevented all this.

Plaintiff was suspended for four days because his email was deemed disrespectful, intimidating, and insulting by VA's management.  Furthermore, the administration noted that plaintiff had a history of using the VA email system to send inappropriate and harassing email.  VA Medical Center Associate Director, Bruce Triplett states that plaintiff "would very often send me copies of e-mail messages that he would send to his superiors that were, one, very derogatory about them, derogatory about working for the government, derogatory about working for our agency . . . he would send messages to me and the director that were, from my perspective, inappropriate.  And he was asked not to do that, but he continued to do that. . . ."

The plaintiff **did not file** an EEOC complaint alleging retaliation as it relates to his suspension.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.  The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that no actual dispute exists as to any material fact in the case.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  In determining whether to grant a Rule 56 motion, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion.  *Id.*  "The plain

language of Rule 56(c) mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

In making a summary judgment determination, the court should not conduct a

trial by affidavit;  rather, "[c]redibility determinations, the weighing of the evidence, and

the drawing of legitimate inferences from the facts are jury functions, not those of a

judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Accordingly, a

court may not decide any factual issues found in the record on motion for summary

judgment, but if such material issues are present, the court must deny the motion and

proceed to trial. *Impossible Elec. Tech. v. Wachenhut Protection Sys.*, 669 F.2d 1026,

1037 (5th Cir. 1982).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against

whom a motion for summary judgment is made may not merely rest upon his

pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the

court of specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S.

at 324.  Summary judgment is not proper if a dispute about a material fact is

"genuine," or in other words the evidence is such that a reasonable jury could return a

verdict for the non-moving party. *Anderson,* 477 U.S. at 248.  The relevant inquiry is

whether there is sufficient disagreement on the facts to submit them to the jury or

whether it is so one-sided that one party should prevail as a matter of law. *Id.* at 251.

11

### III. <u>PRO SE PLAINTIFFS</u>

Generally, *pro se* plaintiffs lack the juridical skills of a legally-trained lawyer in interpreting and applying the procedural and substantive requirements of the legal system.  As a result, the Fifth Circuit has adopted the rule that courts should liberally construct the pleadings of a *pro se* plaintiff.  *Perez v. U.S.*, 312 F.3d 191, 194-95 (5th Cir. 2002).  This court, however, is not required to search for or try to create causes of actions for *pro se* plaintiffs.  *Borninski v. Williamson*, 3:02-cv-1014-L, 2005 WL 1206872, at *9 (N.D. Tex. May 17, 2005).  A liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts.  *See Callahan v. C.I.R.*, Civ. A. 99-0295-C-M1, 2000 WL 1141607, at *1 (M.D.L.A. Apr. 10, 2000).  As such, *pro se* plaintiffs are required to know their legal rights and abide by all applicable procedural rules.  *Boswell v. Gov. of Texas*, 138 F. Supp.2d 782, 785 (N.D. Tex. 2000).  A *pro se* plaintiff's ignorance of or unfamiliarity with court proceedings does not relieve him of this duty.  *See Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991).

### IV. <u>ANALYSIS</u>

A.   *Failure to Exhaust Administrative Remedies*

In its memorandum in support of its motion for summary judgment, the defendant asserts that the plaintiff failed properly to exhaust all administrative remedies on his claims for retaliation as they pertain to the following events:  (1) plaintiff's rejection for the Program Analyst position first advertised on February 12, 2001;  (2) plaintiff's four-day suspension;  (3) plaintiff's denial of advance leave in July

12

2001;  and (4) plaintiff's rejection for the Program Analyst position first advertised on September 17, 2001.  This court agrees.

Under the doctrine of sovereign immunity, an individual may not sue the United States, or its agencies, without its permission.  *US v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 3961 (1983).  In 1972, Congress amended the Civil Rights Act of 1964 to waive the United States' sovereign immunity from claims brought by federal employees for employment discrimination and to permit federal court jurisdiction over such claims. Title 42 U.S.C. § 2000e-16(a);  *see also Misra v. Smithsonian Astrophysical Observatory*, 248 F.3d 37, 39 (1st Cir. 2001).

As a condition of the federal government's waiver, an individual must exhaust all administrative remedies promulgated by the federal entities being sued and enacted by federal law before he may pursue his claim against the federal entity in federal court.  *Misra*, 248 F.3d at 39.  The courts have construed this condition as a prerequisite plaintiffs must complete before filing a complaint in federal district court. *E.g.*, *Brown v. General Servs. Admin.*, 425 U.S. 820, 832 (1976);  *Randel v. U.S. Dep't of the Navy*, 157 F.3d 392, 395 (5th Cir. 1998);  *Barnes v. Levitt*, 118 F.3d 404, 408 (5th Cir. 1997).

In the instant case, plaintiff filed three separate administrative complaints alleging discrimination, which the VA's Office of Employment Discrimination Complaint Adjudication consolidated into one investigation.  These claims were as follows:  (1) that plaintiff had been the victim of discrimination on the basis of his sex, race, and disability when he had not been selected for the two analyst positions;  and (2) that

13

plaintiff had been the victim of retaliation when he had been reprimanded for being absent from his work station for six hours.  The Administrative Judge found that these claims lacked merit.  On November 26, 2002, plaintiff received a Final Order from the Administrative Judge, which included a right to sue letter – giving plaintiff the authority to seek redress for these specific claims in federal court.

On January 6, 2006, this court conducted a hearing and permitted plaintiff and counsel for the defense to argue the outstanding motions.  At that hearing, the plaintiff candidly admitted that he had failed to exhaust administrative remedies on his claims that he had suffered retaliation when he had been suspended for four days and when he had been denied  advance leave in July 2001.  Rightfully so.  Plaintiff did not submit any claims on these matters to the EEOC.  Therefore, this court determines that plaintiff has failed to exhaust administrative remedies on these aforementioned claims and, therefore, dismisses the claims.

Defendant acknowledges that plaintiff submitted claims to the EEOC complaining of defendant's refusal on two occasions to appoint plaintiff to the position of Program Analyst.  Defendant nevertheless relies upon a non-exhaustion argument because, says defendant, plaintiff never alleged "retaliation" but alleged instead that he had been discriminated against on the basis of his sex, race, and disability.

In support of his argument that he has exhausted his administrative remedy before the EEOC, plaintiff cites to *Childers v. Slater*, 44 F. Supp.2d 8, 17 (D.D.C. 1999), for the proposition that "claims of retaliation may be raised for the first time in federal court where the claimant has filed an earlier administrative claim of reprisal

14

and alleges further retaliation as a result." The Fifth Circuit recognizes this legal principle as the *Gupta* Exception. In *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981), the Fifth Circuit, allowing "ancillary" retaliation, carved out a limited exception to the requirement that a federal employee must specifically exhaust all administrative remedies.

In *Gupta* the plaintiff received a letter based on his initial charges that he had been discriminated against on the basis of his race. Immediately subsequent to receiving his letter, plaintiff was discharged by his employer. In his federal lawsuit, plaintiff contended that he had been discharged in retaliation for filing the initial EEOC complaint. The District Court determined that the plaintiff's claim of retaliation was barred, because the plaintiff had failed to exhaust administrative remedies on the claim. The Fifth Circuit reversed the District Court's determination, holding that the District Court had "ancillary" jurisdiction over the plaintiff's subsequent retaliatory discharge claim, because the claim grew "out of an administrative charge that [was] properly before the court." *Id.* at 414.

In the case *sub judice*, plaintiff's initial administrative charge is not properly before the court. Plaintiff claims that he was retaliated against on the aforementioned five occasions, because he filed his first EEOC complaint in November 1998, and was subsequently labeled a "troublemaker." Plaintiff admits, however, that he failed to exhaust his administrative remedies on this initial EEOC complaint. At the January 6, 2006, hearing, plaintiff admits that he "let [the matters alleged in the November 1998 complaint] go." As such, plaintiff does not have a cognizable claim before the court

15

onto which this court can attach ancillary jurisdiction vis-a-vis plaintiff's remaining claims that he was retaliated against when he was not selected for the two Program Analyst positions. *Gupta*, 654 F.2d at 414.

At the January 6 hearing, plaintiff additionally argued that the aforementioned retaliation claims (those relative to the two positions of Program Analyst) are properly before the court, because he has a retaliation claim (pertaining to plaintiff's reprimand) that is properly before the court on to which this court could attach the Program Analyst claims.

Plaintiff's argument lacks legal merit. An unexhausted retaliation claim must either relate to an underlying claim before the court, or it must be exhausted through the proper administrative remedies. *Riojas v. Unicco Serv. Co.*, Civ. No. A. SA 04-CA-084-XR, 2005 WL 589419, *2 (W.D. Tex. March 14, 2005) (holding that if an unexhausted retaliation claim does not relate to underlying claims properly before the court, the unexhausted claim is not properly before the court); *Cf. Brigg v. Dart Reg'l Right of Way Co.*, Civ. No. A. 3:05-CV-1358G, 2005 WL 3133505, *3 (N.D. Tex. Nov. 23, 2005) (holding that plaintiff's unexhausted claims of discrimination were not properly before the court, because plaintiff's letter only cited claims of retaliation).

In the instant case, the properly exhausted retaliation claim before the court is the claim that plaintiff was the victim of retaliation when he was reprimanded for being absent without leave on April 23, 2001. Plaintiff has never alleged in his pleadings or presented arguments to the court that the adverse employment actions subsequent to April 23, 2001, occurrence arise out of his filing an EEOC complaint in response to the

16

reprimand he recieved on April 23, 2001.  Plaintiff has maintained throughout the course of this litigation that all of his retaliation claims arise out of his November 1998 filing, not April 23, 2001.  Further, plaintiff was denied the first Program Analyst position prior to his reprimand of April 23, 2001;  so the VA could not have denied plaintiff this position on account of some retaliatory animus.

This court's duty here is clear.  The court must dismiss plaintiff's claims, that he was retaliated against when he was not selected for the two analyst positions because plaintiff never presented these claims as retaliation claims to the EEOC;  plaintiff presented these claims only as sex, race and disability discrimination claims.  The elements and proof for retaliation and sex/race and disability discrimination are different.  To prove retaliation, the plaintiff must show:  (1) he engaged in a protected activity;  (2) an adverse employment action occurred;  and (3) a causal link exists between the protected activity and the adverse action.  *Baker v. American Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005).  To show a prima facie case of sex, race or disability discrimination, the plaintiff must show:  (1) he is a member of a protected class;  (2) he was qualified for an available employment position;  (3) he was not promoted to the available position;  and (4) that either the position was filled by someone not in the protected class, or he was not promoted because of his race.  *Pratt v. City of Houston*, 247 F.3d 601, 606 n.2 (5th Cir. 2001).

Since the plaintiff did not label these claims as retaliatory, this court cannot conclude that the EEOC was provided the opportunity to assess the special evidence

17

required for an analysis under retaliation.  Further, this court is wholly unpersuaded that these claims are "ancillary" as recognized by the *Gupta* jurisprudence.

B.    *Exhausted Retaliation Claim*

Plaintiff's remaining claim is that he was the victim of retaliation when he was reprimanded for being absent without leave on April 23, 2001.  To establish a prima facie case of retaliation, plaintiff must demonstrate:  (1) he engaged in a protected activity;  (2) he suffered an adverse employment action;  and (3) a causal nexus exists between the protected activity and the adverse employment action.  *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002).

Once the plaintiff has established a prima facie case of unlawful retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001).  If the defendant carries its burden, the plaintiff must then "adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext to retaliation."  *Id.*

In the case *sub judice*, the defendant agrees that plaintiff engaged in a protected activity when he filed the EEOC complaints in November 1998.  The defendant disputes, though, that:  (1) plaintiff suffered any reprisal;  and (2) that plaintiff suffered an adverse employment action when he was reprimanded for being absent without leave on April 23, 2001.

The Fifth Circuit has held that reprimands issued to an employee because the employee was not at his assigned duty station are not the types of employment

18

decisions that constitute "ultimate employment decisions."  As observed in *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997), such reprimands are "at most 'tangential' to future decisions that might be ultimate employment decisions."  *See also Green v. Adm'r of the Tulane Educ. Fund*, 284 F.3d 642, 658 (5th Cir. 2002).

"Ultimate employment decisions," instructs the Fifth Circuit, include acts "such as hiring, granting leave, discharging, promoting, and compensating." *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995).  The evidence in the record *sub judice* shows that plaintiff's reprimand had no impact on his compensation, leave time, or any other term or condition of his employment.

Nevertheless, the plaintiff alleges that the reprimand he received in April 2001 constituted an adverse employment action, because it was taken into consideration when he was given a four-day suspension arising out of emails he sent to an administrative judge.  He has no proof to support the statement.  In support of his contention that the April 2001 reprimand constituted an adverse employment action, plaintiff said he had a VA memorandum stating as much.  The memorandum submitted makes no **mention** of the April 2001 reprimand.

Accordingly, this court determines that plaintiff did not suffer an adverse employment action when he received the reprimand for being absent without leave. Consequentially, this court finds that plaintiff has failed to carry his burden to establish a prima facie case of retaliation;  thus, his claim of retaliation is not legally cognizable, and must be dismissed by this court.

19

*C.     Plaintiff's Motion for Leave of Court to Amend His Complaint*

Plaintiff argues that the Magistrate Judge erroneously denied his numerous motions to amend his pleadings.[4]  This court is not persuaded.  The court is convinced that the Magistrate Judge has been very gracious to the plaintiff, allowing him to amend his complaint several months after the deadline for filing amending pleadings had elapsed.

*Pro se* plaintiffs are obligated to properly follow all applicable rules of procedure.  *E.g.*, *Boswell*, 138 F. Supp.2d at 785.   *Pro se* plaintiffs are also bound by all deadlines and strictures set out by the court.  In the instant case, the Case Management Plan and Scheduling Order approved by the Magistrate Judge states that the deadline for the "joining of parties, amending of pleadings" was October 28, 2004.  This date notwithstanding, the Magistrate Judge, under no obligation to do so, granted the plaintiff's motion to amend his complaint (with no objection from the defendant) on February 8, 2005, some 3 months after the aforementioned deadline. Subsequently, on April 27, 2005, some 6 months after the deadline, the plaintiff again sought to amend his complaint via motion.  The Magistrate Judge denied his motion, not because of the obvious procedural bar, but, instead, because the Magistrate Judge could not discern the nature of the relief plaintiff sought in his motion.  The plaintiff again sought to amend his complaint on May 16, 2005.  The Magistrate Judge

---

[4]Plaintiff's underlying argument is that his amended complaint would withstand a motion for summary judgment.

again denied plaintiff's motion because the motion failed to state the nature of the relief he sought from the court.

Based on the record, it is readily apparent that the Magistrate Judge, although he was not legally bound to do so, gave the plaintiff several opportunities to amend his pleadings even though the deadline for such motions had elapsed.  Additionally, the Magistrate Judge properly denied the motions after reviewing the substance of the plaintiff's motions for failure to state a discernible prayer for relief, even though he could have denied the motions as procedurally barred *carte blanche.*  As stated *infra*, the Magistrate Judge had no duty to search the plaintiff's motions to amend his complaint for the nature of relief for the *pro se* plaintiff.  Accordingly, the court determines that plaintiff's motions to amend his complaint were not erroneously denied by the Magistrate Judge.

Even so, the court reviewed the amended complaint plaintiff attached to his numerous motions to amend his complaint.  The court is not persuaded that the attached amended complaint if properly before the court would withstand the defendant's motion for summary judgment *sub judice.*  The plaintiff's amended complaint is still a complaint alleging **retaliation**.  Importantly, in the *ad damnum* clause of plaintiff's complaint, he requests damages arising out his claim of retaliation only.  *He does not raise new claims relative to his properly exhausted claim*.  As such, plaintiff would be under the same obligation to properly exhaust the unexhausted claims of retaliation through the proper administrative channels before filing a federal lawsuit alleging retaliation.

**CONCLUSION**

This court finds that plaintiff failed to exhaust the applicable administrative remedies on his claims for retaliation as they pertain to the following events:  (1) plaintiff's rejection for the Program Analyst position first advertised on February 12, 2001;  (2) plaintiff's four-day suspension;  (3) plaintiff's denial of advance leave in July 2001;  and (4) plaintiff's rejection for the Program Analyst position first advertised on September 17, 2001.  Accordingly, this court dismisses plaintiff's retaliation claims relative to these occasions without prejudice.

This court further determines that plaintiff's claim that he was the victim of retaliation when he was reprimanded for being absent without leave on April 23, 2001, lacks merit.  Plaintiff cannot demonstrate a prima facie case of retaliation.  Resultedly, this court must dismiss this claim with prejudice.

All other pending motions are hereby terminated as moot.  The court will enter a Final Judgment in accordance with the local rules.

**SO ORDERED** this the 30th day of September, 2006.

**s/ HENRY T. WINGATE**

_____

**CHIEF JUDGE UNITED STATES DISTRICT COURT**

Civil Action No. 3:03-cv-284HTW-JCS
Memorandum Opinion and Order

22